Mervin E. McQUILLEN, Appellant,

v.

CITY OF SIOUX CITY, Iowa, a Municipal Corporation, Paul Flynn, and Gerald P. Donovan, Appellees.

No. 65602.

Supreme Court of Iowa.

June 17, 1981.

Harry H. Smith and MacDonald Smith, Sioux City, for appellant.

Michael S. Walsh, City Atty., and Patrick J. Nugent, Asst. City Atty., for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, ALLBEE, and SCHULTZ, JJ.

McCORMICK, Justice.

The question here is whether the trial court abused its discretion in dismissing plaintiff's petition because of his refusal to undergo a medical examination ordered by the court pursuant to Iowa R.Civ.P. 132. We find no abuse of discretion and therefore affirm the judgment.

Plaintiff Mervin E. McQuillen is a Sioux City policeman. He was off work and received medical care at the expense of defendant Sioux City because of frequent chest pains which he and his personal physician attributed to variant angina. At the request of the City, plaintiff was examined by physicians at University Hospital in Iowa City.

The Iowa City doctors ruled out coronary artery atherosclerotic disease but acknowledged the possibility of variant angina. Two tests for variant angina are recognized. One is a thallium treadmill test and the other is a coronary arteriography. The Iowa City doctors administered the thallium treadmill test, and the results were negative. They recommended the coronary arteriography, but plaintiff refused to take the test. He asserted he did not wish to subject himself to the associated risks.

As a result of the Iowa City examination, the City refused to pay further medical expenses for plaintiff and ordered him to return to work. Plaintiff then brought the present action. In one division of his petition he sought a declaratory judgment establishing the City's liability for his continuing medical expenses pursuant to section 411.15, The Code. In a second division, he alleged the City's actions in refusing to pay his medical expenses and in ordering him back to work were arbitrary and capricious. He asked for actual and exemplary damages.

In addition to denying the merits of plaintiff's petition, the City urged several defenses and a counterclaim. In the counterclaim, the City alleged the circumstances of plaintiff's refusal to submit to the coronary arteriography. Among other kinds of relief it asked that plaintiff be required to submit to the examination so that its results could be considered in determining the merits of his petition.

Subsequently the City filed a motion to require plaintiff to submit to the examination under the authority of rule 132. Plaintiff resisted, and the motion was heard and submitted. The trial court sustained the motion. In its ruling the court found that the examination involved minimal risk. It ordered plaintiff to enter University Hospital for the examination no later than 2:00 p. m., July 20, 1980, and to undergo the examination two days later.

Plaintiff filed a motion for reconsideration which the court heard and denied. When plaintiff refused to take the examination, the City filed a motion to dismiss plaintiff's petition or for other sanctions under rule 134(b)(2). On July 30, 1980, the trial court sustained the motion for sanctions and entered judgment dismissing plaintiff's petition. This appeal followed.

In seeking reversal, plaintiff contends the court abused its discretion by ordering the examination and dismissing his petition when he refused to take it.

■ I. *The order for the examination.* An order for medical examination under rule 132 is discretionary with the trial court. It will not be overturned unless an abuse of discretion is shown. *In re Marriage of Wagner*, 272 N.W.2d 418, 421 (Iowa 1978). The rule provides:

When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

This rule is identical to Fed.R.Civ.P. 35. Thus, cases interpreting the federal rule are persuasive in interpreting our rule.

■ Two elements must be established to warrant an order for examination. First, the mental or physical condition of the party must be "in controversy." *Postell v. Amana Refrigeration, Inc.*, 87 F.R.D. 706, 707 (N.D.Ga.1980); *Marroni v. Matey*, 82

F.R.D. 371, 372 (E.D.Pa.1979). Second, when the condition is in controversy, "good cause" for the examination must be shown. *Schlagenhauf v. Holder*, 379 U.S. 104, 117–18, 85 S.Ct. 234, 242, 13 L.Ed.2d 152, 163 (1964).

██ In the present case, the parties have argued the meaning of various provisions of chapter 411. However, the only provision which we believe is relevant is section 411.-15. That statute requires the City to "provide hospital, nursing, and medical attention" for police and fire department members "when injured while in the performance of their duties as members of such department. . . ." The City refused to pay plaintiff's ongoing medical expenses and ordered him to return to work. It did so at least in part because of its contention he had not demonstrated he had an "injury." In order to defend the action, the City plainly had a right to obtain a diagnosis of plaintiff's condition. Thus, the trial court did not abuse its discretion in finding that plaintiff's physical condition relating to his heart complaint was "in controversy."

The fighting issue is whether the court abused its discretion in finding good cause for the arteriography. The arguments focus on two aspects of the problem. One is the necessity for the procedure and the other is the risk involved.

The Iowa City physicians plainly believed the test was necessary for their diagnosis. Having ruled out other kinds of heart problems, they wished to determine whether plaintiff had variant angina, the very condition which he and his personal physician contended he had. The Iowa City doctors had administered one of the recognized tests for that condition with negative results. The remaining diagnostic technique was the arteriography. In these circumstances, the trial court could find the test was reasonably necessary.

The issue of risk presents a more difficult problem. This issue requires weighing the risk against need for the test results. *See Hernandez v. Gulf Oil Corp.*, 21 Fed.Serv.2d 1378, 1379 (E.D.Pa.1976) ("It is the opinion of this court that the potential physical and mental damage outweighs the probable benefits to the interest of justice."); 4A *Moore's Federal Practice*, ¶ 35.04 at 35–23 (2d ed. 1981) ("The court will, of course, hesitate before ordering an examination which would be painful or dangerous to the subject, and will usually require a clear showing that no danger or serious pain is likely to result.").

The record discloses that an arteriography involves a heart catheterization and an injection of a radionuclide to permit tracing of coronary blood flow. In addition, in this case the procedure would require efforts by the doctors to induce the kind of angina spasm for which plaintiff was to be tested. The Iowa City physicians placed the risk of complications of any kind at less than one and one-half percent. No evidence was introduced to show that the risk of serious complications reached that level or that plaintiff would have peculiar susceptibility to risk. Under this record, we cannot say the trial court abused its discretion in finding good cause for the examination.

Therefore we hold that the court did not abuse its discretion in ordering plaintiff to submit to the test.

██ II. *The sanction.* Under rule 134(b)(2)(C), the trial court had authority to dismiss the action because of plaintiff's refusal to undergo the arteriography. The authority is discretionary. *Smiley v. Twin City Beef Co.*, 236 N.W.2d 356, 359 (Iowa 1975). Nevertheless, the drastic action of dismissal should not be ordered in the absence of willfulness, bad faith or fault. *Id.* at 360.

In the present case, no doubt exists of the willfulness of plaintiff's refusal to submit to the examination. This does not mean he proceeded wrongfully. His refusal to take the arteriography was willful because it was intentional and deliberate. *See Clark v. Sheriff*, 247 Iowa 509, 515, 74 N.W.2d 569, 573 (1956). It was not a result of negligence or oversight. *See, generally, General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 1210–15 (8th Cir. 1973). We do not question plaintiff's sin-

cerity in not wishing to assume the risks of the test.

Although less drastic alternatives were available, the trial court did not abuse its discretion in imposing the sanction of dismissal.

AFFIRMED.