# IN THE SUPREME COURT OF IOWA

No. 19–2121

Submitted March 24, 2021—Filed April 16, 2021

**JULIAN JAY TONEY,**

Appellant,

vs.

**HAZEL PARKER, ARTHUR PARKER,** and the **ARTHUR E. PARKER AND HAZEL FRANCES PARKER TRUST DATED 05/26/1993,**

Appellees.

Appeal from the Iowa District Court for Decatur County, Dustria A. Relph (motion to strike and motion for summary judgment) and John D. Lloyd (motion to vacate), Judges.

The plaintiff appeals summary judgment and ruling denying motion to vacate. **REVERSED.**

Waterman, J., delivered the opinion of the court, in which all participating justices joined. McDermott, J., took no part in the consideration or the decision of the case.

James C. Larew of Larew Law Office, Iowa City, for appellant.

Daniel R. Rockhold, Corydon, for appellees.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court abused its discretion by striking the plaintiff's resistance to a motion for summary judgment. The plaintiff timely filed his resistance and supporting papers on the last day of an extended deadline, but the clerk of court rejected the filing the next morning because of a failure to redact the plaintiff's own social security number. The plaintiff corrected that oversight and refiled 150 pages of resistance papers within the hour, but the district court granted the defendants' motion to strike the entire filing as untimely and noncompliant due to an unsigned memorandum; a miscaptioned response to the defendants' undisputed facts; and a separate resistance document initially filed, then inadvertently omitted, then refiled promptly. The district court simultaneously granted summary judgment dismissing the plaintiff's claims. The plaintiff filed a motion to vacate the judgment, arguing the judge failed to disclose possible grounds for recusal. A different judge rejected the recusal argument, denied the motion to vacate, and ultimately entered judgment for the defendants on their counterclaims, relying in part on the summary judgment. We retained the plaintiff's appeal.

On our review, we conclude the resistance documents were timely filed notwithstanding their technical shortcomings, and the district court abused its discretion by striking the entire resistance filing without any showing of prejudice or violation of a prior court order. That error requires a new hearing on the summary judgment motion and a new trial. We remand the case for further proceedings by a new judge, which renders the recusal issue moot.

## I. Background Facts and Proceedings.

Ruth Parker owned real estate in Decatur County commonly referred to as the "Y" property. The Toney family rented this parcel of approximately twenty-four acres from the Parker family beginning in the 1970s. The parties disagree as to whether the Toneys rented the land continuously. In 1990, Ruth died and the land was conveyed to Ruth's son Arthur, commonly called "Ted," and his wife, Hazel. Ted and Hazel transferred the property into the Arthur E. Parker and Hazel Frances Parker Trust (the Trust), which remains the record title holder of the Y property.

Julian Toney and his wife, Anita, sent five letters to the Parkers asking to sell them the Y property. One was undated, another was dated March 25, 2003, followed by three more dated October 15, October 28, and November 2, 2015, respectively. None of the letters mentioned an "option to purchase" or a "life time offer." In September 2015, Toney sent a cashier's check in the amount of $24,000 to the Parkers' Trust for the land and a warranty deed prepared for the trustee's signature; the Parkers did not accept the tender. Toney alleges the Parkers listed the Y property for sale in September 2016.

On November 25, 2016, the Parkers filed a forcible entry and detainer (FED) action in Decatur County and served notice on Toney. The next business day, November 28, Toney recorded a "Life Time Lease" to the Y property, allegedly executed in 1974, which stated:

> Life time Lease
>
> Rental Agreement – between Parker family and Toney family. for the Y land 27 acres 3/4 mile north of Ruth parker's house. on east side of road. 4 acre and 3 acre of grass and hay field. $200.00 year.

> also a 50/50 – timber agreement after 20 year log cut 50/50 share.  50% parker 50% toney – toney brush cut & trim – 20 acres of timber.
>
> also a right to purchase the 27 – Y – acres after 20 year f[ro]m the Date June 22 1974. at $575 acre. – life time offer.

The document included the signature of Julian Toney as "Renter 50/50 pastures" and the purported signature of Arthur E. Parker as "Son and Overseer of Ruth Parker." Ted denies that he signed the lease.  The parties dispute whether Ted would have had the authority to sign on behalf of his mother.  The Parkers argue that Ted lacked such authority because his mother was still alive and had not authorized him to act as her agent.  They also point to a real estate contract Ruth (not Ted on her behalf) executed with another individual in 1975.

The district court dismissed the FED action on January 4, 2017, finding that the Parkers had failed to comply with the notice requirement for farm tenancies in Iowa Code section 562.7.  On July 6, the Parkers served Toney a notice that the farm tenancy would terminate on March 1, 2018.  In February 2018, Toney's attorney sent a lease-purchase option and $15,525 to the Parkers' attorney, who rejected the offer on April 4. Notably, this was $8475 less than Toney's offer in September 2015; Toney's explanation for the discrepancy was his friendship with Ted.

On February 28, 2018, the last day of Toney's farm tenancy, Toney filed a petition for declaratory judgment, specific performance, injunctive relief, and attorney fees.  Toney requested a temporary and permanent injunction protecting him from the Parkers' "efforts to seize ownership and control of the Y farm," a declaratory judgment that the lifetime lease gave Toney the right to purchase the Y farm, and specific performance.

On May 7, the Parkers filed an answer with counterclaims for slander of title, ejectment, trespass, quiet title, and punitive damages.  The

Parkers alleged that Ted's signature on the lifetime lease was forged. The Parkers' trespass and ejection claims were based on Toney failing to vacate the property on March 1 pursuant to their notice of termination.

After six months of contentious litigation, the Parkers filed a motion for summary judgment to dismiss Toney's claims as time-barred, and on grounds that no enforceable lifetime lease existed. The Parkers also sought summary judgment on their counterclaims. At Toney's request, the district court extended the deadline for the plaintiff's resistance to December 17.

On December 17, the paralegal for Toney's attorney filed a 2-page resistance, a 46-page memorandum in support of the resistance, a 25-page response to defendants' statement of facts and plaintiff's statement of facts, and a 79-page appendix that included affidavits and deposition testimony and exhibits. At 8:37 a.m. the next day, the filings, totaling 152 pages, were rejected by the clerk of court because Toney's social security number was shown once on page 76 of his appendix. The paralegal redacted the social security number and refiled the documents within forty-five minutes. The paralegal who filed the documents stated in an affidavit that it was his "belief, based on my usual and customary practices, that I filed the Resistance document itself as a part of that filing." However, the resistance was missing from that 150-page refiling; the paralegal attached the 2-page resistance to his affidavit filed on December 21.

The Parkers filed a motion to strike on December 20, arguing that the filings were untimely and deficient because the supporting memorandum was unsigned, the resistance had been omitted, and a statement of disputed facts was miscaptioned. On February 9, 2019, the district court granted the Parkers' motion to strike, noting the deadline

had already been extended once at Toney's request, and further stating there was

> no reasonable excuse for his multiple failures to abide by the Iowa Rules of Civil Procedure by failing to timely file an actual resistance, for failing to sign his memorandum of authorities, or for failing to file a clear statement of disputed facts.

The district court simultaneously granted summary judgment in favor of the Parkers dismissing Toney's claim for breach of contract, denied Toney's requests for temporary and permanent injunctive relief and for declaratory judgment, quieted title in the Parker Trust, ordered Toney to vacate the property within thirty days, and assessed court costs against Toney.

The district court amended its order on March 6, holding that trial was still necessary to adjudicate the Parkers' counterclaim for slander of title, and to determine actual damages on their counterclaims for trespass and ejection, and punitive damages. The district court ruled that the findings of fact in its February 9 order were deemed established along with additional findings set forth in the March 6 order.

On May 15, the Parkers filed an application for rule to show cause, alleging that Toney had failed to remove his cattle and placed a new sign on the gate intended to "discourage potential buyers of the subject property from purchasing the land." The district court granted that application the same day.

Six days later, Toney filed a motion to vacate the district court's February 9 and March 6 orders, on the grounds that Judge Relph had failed to disclose that her husband, Daren Relph, was the CEO for Wayne County Hospital (the Hospital), where the Parkers' attorney, Daniel Rockhold, had been elected to serve on the board of trustees in November 2018. Both parties filed a July 1, 2017 agreement between Mercy Health Network, Inc. (Mercy) and the Hospital whereby Mercy would provide

certain management services to the Hospital, including providing a full-time Chief Executive Officer/Administrator (CEO) for the Hospital. The agreement explains that the board and Mercy will jointly conduct performance reviews and provide these to the CEO's employer. If there is a deficiency in the CEO's performance, the board will notify Mercy. If the deficiency is not cured, Mercy and the Hospital will "work cooperatively to cure such deficiencies to Hospital Board's reasonable satisfaction or, upon mutual agreement of the parties, to provide a replacement CEO." Under the agreement, the board may request the CEO's reassignment, with or without cause. The CEO's employer determines whether the CEO retains employment after reassignment or replacement. The agreement further provides that if the board requests that the CEO be reassigned, and the CEO is terminated, the Hospital "shall reimburse the CEO's employer for any severance."

Toney also filed minutes from board meetings between February 19, 2018 and April 15, 2019. Mr. Relph and Rockhold were present at several meetings where Mr. Relph reported to the board as CEO. At two of these meetings, there was a closed session, after which there was a vote to approve Mr. Relph's compensation, which passed unanimously both times.

The Parkers resisted the motion to vacate, noting that Mr. Relph was not employed by the Hospital but by Catholic Health Initiatives (CHI), that Rockhold had served on the seven-member board since January 2018, that Mercy recommended the CEO's compensation subject to the board's approval, and that if the Hospital discontinued services with Mr. Relph, this would not terminate his employment with CHI or Mercy. Judge Relph, stating she did not believe there was any grounds for disqualification, nevertheless recused herself from further proceedings.

On August 6, Judge John Lloyd denied the motion to vacate, finding there was no basis for disqualification because Mr. Relph was not an employee of the Hospital, his lease to the hospital was "not terminable at will by the Hospital," and "[t]ermination without cause could entail substantial financial cost to the Hospital." The district court also noted that Rockhold "is only one vote out of seven" and a majority of board members would have to act to change Mr. Relph's compensation while "both actions to set Mr. Relph's compensation that are disclosed on this record were unanimous."

The case proceeded to a bench trial on October 22. Judge Lloyd presided. On November 18, the district court entered its findings of fact, conclusions of law and judgment entry. The district court began by referencing the prior summary judgment by Judge Relph that dismissed all of Toney's claims and quieted title in favor of the Parkers. The district court then adjudicated the Parkers' counterclaims and entered judgment against Toney and in favor of the Parker Trust, awarding $62,100 for slander of title, $500 for trespass, and $15,000 in punitive damages. The district court found Toney in contempt for not removing his cattle and signs from the Y property, and sentenced him to jail time and fines totaling $1000. The district court suspended the issuance of mittimus on the condition that within thirty days Toney install a fence or other temporary measure to prevent his cattle from entering the Parkers' property, remove his signs from the Parkers' property, and repair any damage resulting from their removal.

Toney appealed, and we retained the case.

## II. Standard of Review.

We review for abuse of discretion a district court's ruling on the procedural requirements for resisting a motion for summary judgment.

*See Bitner v. Ottumwa Cmty. Sch. Dist.*, 549 N.W.2d 295, 302 (Iowa 1996); *Anderson v. Douglas & Lomason Co.*, 540 N.W.2d 277, 281 n.2 (Iowa 1995) ("We believe the trial court has discretion to consider on its merits a summary judgment motion filed later than the deadline contained in rule [1.981(3)]."). Orders dismissing claims as a sanction are reviewed for abuse of discretion. *Krugman v. Palmer Coll. of Chiropractic*, 422 N.W.2d 470, 473 (Iowa 1988).

We review a district court's ruling on a motion to vacate for correction of errors at law. *State ex rel. Goettsch v. Diacide Distribs., Inc.*, 596 N.W.2d 532, 537 (Iowa 1999). "We review a judge's recusal decision for an abuse of discretion." *State v. Hoyman*, 863 N.W.2d 1, 7 (Iowa 2015) (quoting *State v. Millsap*, 704 N.W.2d 426, 432 (Iowa 2005)).

### III. Analysis.

Toney argues that the district court erred in granting the motion to strike his summary judgment resistance filings. The Parkers argue that the district court properly granted their motion to strike because Toney's filings were untimely and noncompliant. We conclude the filings were timely and substantially compliant and that the district court abused its discretion by granting the motion to strike.

We addressed a similar timeliness issue in *Jacobs v. Iowa Department of Transportation*, 887 N.W.2d 590 (Iowa 2016). Jacobs's driver's license had been revoked and suspended for failure to submit to chemical testing. *Id.* at 591. Jacobs contended that he did not refuse testing. *Id.* at 592. An administrative law judge (ALJ) upheld the revocation and suspension and the Iowa Department of Transportation (DOT) affirmed the ALJ's decision. *Id.* Jacobs sought judicial review, and on the last day of the deadline Jacobs's counsel electronically submitted a petition for judicial review. *Id.* The next morning, the clerk of court sent

Jacobs's counsel a message that his petition had been "Returned Not Filed" because it had been mislabeled and his address was missing. *Id.* Counsel's firm corrected the errors and resubmitted the petition on EDMS; the clerk of court electronically file-stamped the petition that same morning. *Id.* The DOT filed a motion to dismiss based on the untimeliness of the petition. *Id.* The district court granted the motion to dismiss the petition as untimely. *Id.* On our review, we held

> [A] resubmitted filing can relate back to the original submission date for purposes of meeting an appeal deadline when the following circumstances converge. First, the party submitted an electronic document that was received by EDMS prior to the deadline and was otherwise proper except for minor errors in the electronic cover sheet—i.e., errors that could have been corrected or disregarded by the clerk. Second, the proposed filing was returned by the clerk's office after the deadline because of these minor errors. Third, the party promptly resubmitted the filing after correcting the errors.

*Id.* at 599. [1] We noted that to hold differently

> would give no effect to the language of the rule requiring the filer to keep track of the date and time of the original submission[,] . . . allow district court jurisdiction to be dependent on how a clerk exercised his or her discretion[,] . . . erode the clarity of existing deadlines to appeal to district court[, and] it would provide no protection to the filer if the original submission was returned erroneously or if the clerk's

---

[1]Iowa Court Rule 16.201(5) defines "EDMS" as "the electronic document management system, the Iowa Judicial Branch electronic filing and case management system." Upon filing,

> [i]f the clerk of court discovers an error in the filing or docketing of a document, the clerk will ordinarily notify the filer of the error and advise the filer of what further action the filer must take, if any, to address the error.

*Id.* r. 16.308(2)(*d*)(1). Alternatively, the clerk may "correct or disregard" minor errors. *Id.* r. 16.308(2)(*d*)(3). If the clerk returns the submission to the filer, "it is the responsibility of the filer to keep a record of the notice EDMS generated to verify the date and time of the original submission." *Id.* r. 16.308(*d*)(2). The rules state that they "are not intended to address" the issue of whether the corrected filing relates back to the original submission. *Id.* However, in *Jacobs*, we held that such a correction would relate back to the original submission. 887 N.W.2d at 599.

office took a long time to process and then ultimately return a filing.

*Id.* (footnote omitted). *Jacobs* governs the timeliness issue here.

As in *Jacobs*, Toney's documents were initially submitted within the deadline. The error at page 76 of the appendix—Toney's own unredacted social security number, not that of a third party—could have and should have been redacted by the clerk of court without rejecting the entire 152 pages filed in resistance to the motion for summary judgment. The clerk of court rejected the filings after the deadline—the next morning. Toney's paralegal promptly refiled the documents after redacting the social security number, and received a notification at 9:19 a.m. that his new 150-page filing was accepted. Importantly, the deadline for resisting a motion for summary judgment is not jurisdictional. *See id.* at 597. Under *Jacobs*, we hold that Toney's documents relate back to the original submission date and were timely filed.

The other shortcomings in Toney's filing did not justify striking the submission. Toney's 2-page resistance was included in the initial filing, but omitted when the 150 pages of documents supporting Toney's resistance were refiled the next morning. The memorandum and related filings made clear Toney resisted the motion for summary judgment. The paralegal attached the resistance itself to his affidavit on December 21. The paralegal testified therein as to his "belief, based on my usual and customary practices, that I filed the Resistance document itself as a part of that filing." Omitting the resistance in the second submission was an excusable error and promptly corrected. Counsel's failure to sign the memorandum was not fatal either. The district court or the clerk of court should have simply directed counsel to remedy that oversight by signing it. *See* Iowa R. Civ. P. 1.413(1) ("If a motion, pleading, or other paper is

not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant.").

Finally, the district court elevated form over substance by faulting Toney for not using the caption "Statement of Disputed Facts."[2] Toney captioned that document "Plaintiff-Counterclaim Defendant Julian Toney's Responses to Statements of Undisputed Facts Submitted by Defendants-Counterclaimants and Plaintiff's Statements of Fact." In *Bouse v. Rouse*, we recognized that "[t]he designation given a pleading is not of vital importance. Its character is to be determined largely by its allegations and legal effect, not solely from the name given it." 174 N.W.2d 660, 665 (Iowa 1970) (quoting *Chi., Rock Island & Pac. R.R. v. Linwood Stone Prods. Co.,* 258 Iowa 1378, 1381, 138 N.W.2d 902, 903 (1965)). In *Schulte v. Mauer*, we applied this rule to a mislabeled summary judgment filing. 219 N.W.2d 496, 502 (Iowa 1974); *see also Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002) ("[W]e treat a motion by its contents, not its caption."). Toney's filing specifically responded to each of the eighteen paragraphs of the Parkers' statement of facts, indicating which he admitted or disputed, along with objections and explanations. He then set forth his own seventy-five numbered paragraphs of facts, citing to the record contained in an accompanying seventy-nine-page appendix consisting of affidavits, deposition testimony, and exhibits. His filing made

---

[2]Iowa Rule of Civil Procedure 1.981(3) provides, "The resistance shall include a statement of disputed facts, if any, and a memorandum of authorities supporting the resistance." The local rules for federal courts in Iowa provide more specificity, and require a "response to the [movant's] statement of material facts in which the resisting party expressly admits, denies, or qualifies each of the moving party's numbered statements of fact" and a "statement of additional material facts that the resisting party contends precludes summary judgment." N.D. & S.D. Iowa Civ. LR. 56(b). We encourage litigants in our state courts to follow that practice in order to help the district court more easily determine whether any genuine issue of material fact precludes summary judgment. Toney did so.

clear what facts were disputed, including whether Ted Parker had signed the "Life Time Lease" and whether he was authorized to do so by Ruth Parker. Toney's response satisfied Iowa Rule of Civil Procedure 1.981(3).

Toney had not violated a prior court order compelling an earlier response or requiring corrections. Generally, we do not affirm the sanction of dismissal without the violation of a prior court order. *See Krugman*, 422 N.W.2d at 473 (surveying cases and noting the "range of discretion is narrowed" when the chosen sanction is dismissal of the action (quoting *Postma v. Sioux Ctr. News*, 393 N.W.2d 314, 318 (Iowa 1986))). Dismissal is a drastic remedy. *See id.* The district court, by striking Toney's resistance filings and granting summary judgment, effectively imposed the sanction of dismissal for technical shortcomings without any violation of a prior court order.

> Justice is not served by taking a heavy-handed approach to violations of [summary judgment procedural] rules. . . . Imposing Draconian sanctions for isolated rule violations, however, does far more than simply punish[ ] the attorneys. Rather, such an approach destroys the vital right of the, most likely, innocent client to have her day in Court simply because her attorney mistakenly violates a local procedural rule.

*Anderson v. Bristol, Inc.*, 936 F. Supp. 2d 1039, 1047 (S.D. Iowa 2013) (second alteration in original) (quoting *Nw. Bank & Tr. Co. v. First Ill. Nat'l Bank*, 221 F. Supp. 2d 1000, 1004 (S.D. Iowa 2002), *rev'd in part on other grounds*, 354 F.3d 721 (8th Cir. 2003)).

We recently reiterated that "there is a longstanding policy in our state favoring the resolution of legal disputes on the merits" rather than by default. *No Boundry, LLC v. Hoosman*, 953 N.W.2d 696, 699–700 (Iowa 2021). Moreover, "technical mistakes will not preclude an injured plaintiff from recovery, except where the correction of such mistakes would materially prejudice the rights of a defendant." *Patten v. City of Waterloo,*

260 N.W.2d 840, 841 (Iowa 1977). The Parkers filed their substantive reply to the resistance on December 22. They cannot show prejudice.

We conclude that the district court abused its discretion by granting the Parkers' motion to strike Toney's resistance filings. *See Bitner*, 549 N.W.2d at 302 (reviewing rulings on the procedural requirements for summary judgment for abuse of discretion). With Toney's resistance stricken, the district court simultaneously entered summary judgment against him effectively by default. The case then proceeded to a bench trial on the Parkers' counterclaims with key liability issues summarily decided against Toney. He did not get a fair day in court. We determine that the remedy requires a new hearing on the Parkers' motion for summary judgment and a new bench trial on their counterclaims and any remaining issues.

Because we vacate the challenged rulings, "we need not and do not reach the question whether the district judge hearing the case should have recused herself. Instead, we simply exercise our authority to order the case to be heard by a different judge on remand." *Hoyman*, 863 N.W.2d at 20.

**IV. Disposition.**

For these reasons, we reverse the ruling striking Toney's resistance to the motion for summary judgment, and we vacate the resulting summary judgment and bench trial judgment. We remand the case for a new hearing on the Parkers' summary judgment motion and a new trial on their counterclaims. The proceedings on remand shall be heard by a different judge.

**REVERSED.**

All justices concur except McDermott, J., who takes no part.